## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### Fort Pierce Division

CASE NO.: 2:19-cv-14411

SHAYNA MORALES,

     Plaintiff,

vs.

FASTRX, INC.
f/k/a DOC RX, CO., INC.,

     Defendant.

_____/

## NOTICE OF REMOVAL

    Defendant DocRX Inc. ("DocRX"), improperly identified as FASTRX, INC. f/k/a/ DOC

RX, CO., INC. in Plaintiff's Complaint,[1] respectfully files this Notice of Removal, and, in

support, states as follows:

---

[1] Based on the Florida Department of State's corporate entity records, FASTRX, INC. f/k/a/ DOC RX, CO., INC. ("FASTRX") appears to have been a Florida corporation that was administratively dissolved in 1998 and that maintained a principal address in Miami, Florida. [*See* Fla. Sec'y of State Entity Records, **Exhibit A.**] While Plaintiff names FASTRX in her Complaint, DocRX acknowledges that it employed Plaintiff and that it is the entity Plaintiff is suing. It is clear from the record that DocRX is the proper defendant. For example, Plaintiff alleges claims against her former "employer," and her employment agreement was with "DocRX, Inc., an Alabama corporation . . . having its principal office at 4636 Bit and Spur Road, Suite A, Mobile, Alabama 36608." [*See* Employment Agreement, **Exhibit D-4.**] Moreover, Plaintiff's counsel directed service of the Complaint via certified mail to "DocRX, Inc." at the same Mobile, AL address, and included a form Waiver of Service of Summons with the name "DocRX, Inc." appended to the signature block. [*See* Waiver of Service and Cover Letter, **Exhibit B.**] Finally, Plaintiff's Complaint follows her filing of a Charge of Discrimination with the EEOC that identified "Doc RX" as her former employer, with a street address of 4636 Bit and Spur Road, Suite A, Mobile, AL 36608. [*See* EEOC Charge of Discrimination, **Exhibit C.**] As evidenced by the attached Declaration of Brian Ward, DocRX's CEO and Founder, DocRX has never operated as "FASTRX," "DOC RX, CO., INC.," or any derivations thereof, and DocRX has never been a Florida entity nor maintained any corporate offices in Florida. [*See* Decl. of Brian Ward, ¶¶ 2–3 **Exhibit D.**] DocRX has been in continued existence since 2008

## I.    INTRODUCTION

1.      This lawsuit is a civil action within the meaning of the Acts of Congress relating to the removal of cases.  Plaintiff Shayna Morales ("Plaintiff") instituted the civil action on September 13, 2019, by filing a Complaint (the "Complaint"), which was assigned case number 2019CA001788, in the Circuit Court of the Nineteenth Judicial Circuit in and for St. Lucie County, Florida.  A true and correct copy of all process and pleadings filed in the state court is attached hereto as **Exhibit E**.

2.      Plaintiff's Complaint arises from her employment with DocRX, an Alabama corporation, and alleges two causes of action under the Florida Civil Rights Act of 1992, Florida Statutes § 760, *et seq.* (the "FCRA").  Specifically, Plaintiff alleges DocRX "discriminated against the Plaintiff in the terms and conditions of her employment and has denied the Plaintiff continued employment because of her handicap [breast cancer]" and allegedly failed to provide her reasonable accommodations.  [Ex. E, Complaint, ¶¶ 23, 30.]

3.      DocRX was served with the Complaint on September 30, 2019, and executed a waiver of service of a summons on October 16, 2019, pursuant to Florida Rule of Civil Procedure 1.070(i).  Because this Notice of Removal is filed within thirty days after service of the Complaint upon DocRX and DocRX's waiver of service of a summons, it is timely under 28 U.S.C. § 1446(b).

4.      This action is one over which this Court has original jurisdiction under 28 U.S.C. § 1332, and is one that may be removed to this Court pursuant to 28 U.S.C. §§ 1441 and 1446

---

and has never been known by any other name (except, briefly, Gulf Coast Pharmacy Services, Inc., from September 4, 2008 to March 2, 2009).  [*Id.* at ¶ 3]  DocRX has maintained its office at 4636 Bit and Spur Road, Suite A, Mobile, AL 36608 since March 17, 2010, and, in that time, no entity named "FASTRX," "DOC RX, CO., INC.," or any derivations thereof, has ever operated out of the same address.  [*Id.*]

because complete diversity of citizenship exists and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5.      The United States District Court for the Southern District of Florida, Fort Pierce Division, is the division of said Court for the county in which said case is pending, and DocRX properly seeks to remove this action to this Court.

## II.      COMPLETE DIVERSITY OF CITIZENSHIP EXISTS

6.      Plaintiff alleges in her Complaint that she is a resident of St. Lucie County Florida [*see* Ex. E, Complaint, at ¶ 4], and the evidence confirms that Plaintiff is a citizen of Florida.

7.      Diversity of citizenship is determined by the parties' citizenship "at the time of filing suit," and, for natural persons, "[c]itizenship is equivalent to 'domicile' for purposes of diversity jurisdiction." *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002).   A person's domicile, in turn, is "the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." *Id.* (quotations omitted).   When determining an individual's domicile, the Court may consider "several types of evidence, including, but not limited to, the party's affidavit, deposition testimony, driver's license, tax returns, banking statements, voter registration, medical records, utility phone bills, employment records, vehicle registration, professional licenses, membership in religious, recreational and business organizations, location of real property and place of employment." *Est. of Cochran by and through Pevarnek v. Marshall*, 2017 WL 5899200, at *2 (M.D. Fla. Nov. 30, 2017).   "Under federal law, there is a presumption that a person's domicile remains the same until that person proves that it has changed." *Timbercreek Asset Mgt., Inc. v. De Guardiola*, 2019 WL 947279, at *4 (S.D. Fla. Feb. 27, 2019) (internal quotations and brackets omitted).

3

8.    Here, the following evidence demonstrates Plaintiff was domiciled in the State of Florida at the time she filed her Complaint and as of the date of this Notice of Removal:

   a.   Plaintiff alleges in her Complaint that she is a resident of St. Lucie County, Florida.  [*See* Ex. E, Complaint, ¶ 4.]

   b.   On or about February 19, 2019, Plaintiff submitted a Charge of Discrimination to the EEOC Miami District Office wherein Plaintiff declared under penalty of perjury that her street address was in Port St. Lucie, Florida. [*See* Ex. C,  EEOC Charge of Discrimination.]

   c.   Plaintiff maintains a Florida driver's license.  [*See* S. Morales Fla. Driver's License, **Exhibit D-5**.]

   d.   Plaintiff owns real property in St. Lucie County, Florida.  [*See* S. Morales Warranty Deed, **Exhibit F**.]

   e.   In connection with her employment with DocRX, Plaintiff executed a Form W-4 in 2018 declaring under penalty of perjury that she maintained a home address in Port St. Lucie, Florida.  [*See* S. Morales Form W-4, **Exhibit D-6**.]

   f.   In connection with her employment with DocRX, Plaintiff provided a void check in 2018 for payroll purposes evidencing her address was in Port St. Lucie, Florida.  [*See* S. Morales Void Check, **Exhibit D-7**.]

   g.   On April 29, 2017, Plaintiff filed a Voluntary Petition for Chapter 7 Bankruptcy in the United States Bankruptcy Court for the Southern District of Florida in which she declared under penalty of perjury that she lives in Port Saint Lucie, Florida.   [*See* S. Morales Voluntary Petition for Ch. 7 Bankruptcy, **Exhibit G**.]

9.      Defendant DocRX is an Alabama corporation with its principal place of business in Mobile, Alabama.  [Ex. D, Decl. of Brian Ward, at ¶ 2.]  Therefore, DocRX is an Alabama citizen for purposes of diversity jurisdiction.  *See* 28 U.S.C. § 1332(c)(1).

## III.     THE AMOUNT IN CONTROVERSY REQUIREMENT IS SATISFIED

10.     Pursuant to 28 U.S.C. § 1446(c)(2)(A), DocRX asserts that the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.  Plaintiff does not identify the amount of her alleged damages, but broadly requests "all damages recoverable under the Florida Civil Rights Act of 1992, including punitive damages, as well as costs, expenses, attorneys fees, and any other lawful relief this Court deems to be just and proper."  [Ex. E, Complaint, p. 5.]  The FCRA authorizes courts to award back pay; front pay; punitive damages; "compensatory damages, including, but not limited to, damages for mental anguish, loss of dignity, and any other intangible injuries"; other "affirmative relief from the effects of the [allegedly discriminatory] practice"; and "reasonable attorney's fees and costs to the prevailing party."  Fla. Stat. Ann. § 760.11(5).

11.     Where, as here, a plaintiff has made an unspecified demand for damages, "the defendant is required to show that by a preponderance of the evidence that the amount in controversy can more likely than not be satisfied."  *Kirkland v. Midland Mortg. Co.*, 243 F.3d 1277, 1281 n.5 (11th Cir. 2001).  In assessing the amount in controversy, the Court is not limited to the information in a plaintiff's complaint, but may also consider affidavits, declarations, and other evidence submitted by the defendant to support removal.  *Cantor v. Hartford Ins. Co. of the Midwest*, 2010 WL 11596736, at *1 (S.D. Fla. June 15, 2010) ("Defendant may introduce its own affidavits, declarations, or other documentation—provided, of course, that removal is procedurally proper."); *Fowler v. Safeco Ins. Co. of Am.*, 915 F.2d 616, 617 (11th Cir. 1990)

("Defendants have the opportunity to submit affidavits, depositions, or other evidence to support removal.").

12.     DocRX in no way intends to imply or suggest that Plaintiff will prevail in this action or recover any of the amount in controversy.  Rather, DocRX vehemently and categorically denies it has violated the FCRA.  Nevertheless, the appropriate inquiry at this juncture under Eleventh Circuit precedent is not whether Plaintiff will recover the jurisdictional amount in controversy, but whether Plaintiff *could* recover at least $75,000.  *See McDaniel v. Fifth Third Bank*, 568 Fed. Appx. 729, 732 (11th Cir. 2014) ("For purposes of establishing jurisdiction, it is enough to show that [s]he could.").

13.     In assessing the amount in controversy, "Eleventh Circuit precedent permits district courts to make reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings to determine whether it is facially apparent that a case is removable.  Put simply, a district court need not suspend reality or shelve common sense in determining whether the face of a complaint . . . establishes the jurisdictional amount." *Roe v. Michelin N.A., Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010) (quotations omitted).  Moreover, "when analyzing the amount in controversy, the district court is precluded from inquiring into the amount a party is likely to receive on the merits." *McDaniel*, 568 Fed. Appx. at 731. Instead, the defendant "need only prove the jurisdictional facts necessary to establish that . . . damages in an amount necessary to reach the jurisdictional minimum are at issue—that is, that such damages *could* be awarded." *Id.* (emphasis in original).

14.     Here, the amount in controversy requirement is easily satisfied by Plaintiff's claims for back pay, front pay, compensatory damages, punitive damages, and attorneys' fees, all

of which are within the ambit of "all damages recoverable under the" FCRA and "any other lawful relief," which Plaintiff demands in her Complaint.  [Ex. E, Complaint, p. 5.]

15.   **Back Pay and Front Pay.**  Damages recoverable under the FCRA may include "back pay" and "front pay."  Fla. Stat. Ann. § 760.11(5) (authorizing award of back pay in civil action under the FCRA); *Haines City HMA, Inc. v. Carter*, 948 So. 2d 904, 906 n.2 (Fla. 2d Dist. App. 2007) (recognizing front pay as a remedy under FCRA).

16.   In calculating the potential amount of back pay at issue for jurisdictional purposes, it is proper to calculate the figure from the date of termination through the prospective trial date.  *E.g.*, *Kok v. Kadant Black Clawson, Inc.*, 274 Fed. Appx. 856, 857 (11th Cir. 2008) ("[D]istrict court correctly concluded" amount in controversy satisfied where defendant calculated plaintiff's "recovery for back pay from the date of his termination to trial to equal $94,963."); *Messina v. Chanel, Inc.*, 2011 WL 2610521, at *2 (S.D. Fla. July 1, 2011) (calculating back pay from date of termination until the "time of trial" for purposes of jurisdictional amount in controversy).[2]

17.   A reasonable estimate of a trial date would be approximately one year from the date of removal (i.e., October 30, 2020),[3] and courts generally find twelve months of front pay to be appropriate for establishing the jurisdictional amount in controversy.  *E.g.*, *Wineberger v.*

---

[2] While this Court has calculated the amount of back pay both as of a prospective trial and as of the date of removal, *compare Morgan v. Sears, Roebuck, and Co.,* 2012 WL 2523692, at *2 (S.D. Fla. June 29, 2012) (finding "it is appropriate to use the trial date . . . to calculate the probable back pay of Plaintiff" in FCRA action), *with Falci v. Menzies Aviation, Inc.*, 2011 WL 13214122, at *1 (S.D. Fla. Jan. 12, 2011) (date of removal), DocRX respectfully submits that the amount should be calculated as of the date of trial because this approach is not only better reasoned but is also consistent with the Eleventh Circuit's ruling in *Kok*, 274 Fed. Appx. at 857.

[3] Local Rule 16.1(a)(3) indicates "[t]he majority of civil cases will be assigned to a standard [case management] track," and Local Rule 16.1(a)(2)(A) provides that, in a case assigned to a standard track, "discovery shall be completed within 180 to 269 days from the date of the Scheduling Order.

*Racetrac Petroleum, Inc.*, 2015 WL 225760, at *3 (M.D. Fla. Jan. 16, 2015) (considering calculation of "twelve months of front pay" for purposes of jurisdictional analyses), *aff'd* 672 Fed. Appx. 914, 917 (11th Cir. 2016) ("[T]he district court correctly considered front pay" in assessing jurisdictional amount in controversy for FCRA claim); *Brown v. Cunningham Lindsey U.S., Inc.*, 2005 WL 1126670, at *5 (M.D. Fla. May 11, 2005) ("[A]dding one year of front pay" to one year of back pay to find minimum amount in controversy requirement satisfied).

18.     During the term of her employment with DocRX, Plaintiff was entitled to a salary of $5,416.67 per month, or approximately $1,354.17 per week.   [Ex. D-4, Employment Agreement, at § 5(a).]   Plaintiff alleges she was terminated on January 7, 2019.   [Ex. E, Complaint, at ¶ 21.]   Accordingly, from January 7, 2019, through an estimated trial date of October 30, 2020 (a period of 94 weeks), Plaintiff has unmitigated back pay equal to $127,291.99 in controversy.[4]   In addition, a reasonable calculation of one year of front pay equals $65,000.   Based on the estimated back pay and front pay potentially recoverable by Plaintiff, Plaintiff's claim for lost wages alone well exceeds the minimum amount in controversy required by 28 U.S.C. § 1332(a).   *See Messina*, 2011 WL 2610521, at *2 (jurisdictional amount in controversy satisfied because "[a]t the time of trial . . . Plaintiff will have accrued over $75,000 in lost wages.").

19.     **Compensatory and Punitive Damages.**   The FCRA allows for an award of "compensatory damages, including, but not limited to, damages for mental anguish, loss of dignity, and any other intangible injuries . . . ."   Fla. Stat. § 760.11(5).   Plaintiff's Complaint also specifically requests punitive damages, which may be awarded in an amount up to $100,000

---

[4] Even if the Court were to calculate back pay as of the date of removal (equal to $56,875.14), the $18,124.87 difference necessary to exceed the jurisdictional minimum is easily satisfied by the amounts of front pay, compensatory damages, punitive damages, and attorneys' fees that are also "in controversy" in this case.

under the FCRA.  Fla. Stat. § 760.11(5).  While DocRX has done nothing that would entitle Plaintiff to any damages, much less punitive damages, the law requires that, at this early stage of the proceedings, Plaintiff's request for punitive damages must be considered.  *Holley Equip. Co. v. Credit All. Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987) ("When determining the jurisdictional amount in controversy in diversity cases, *punitive damages must be considered*, unless it is apparent to a legal certainty that such cannot be recovered.") (citations omitted) (emphasis added).

20.    While Plaintiff does not place a monetary value on the compensatory or punitive damages she seeks, it is evident she believes the alleged events supporting her claims entitle her to significant damages in this action.  Specifically, Plaintiff alleges she was terminated because of her breast cancer diagnosis and, in a January 14, 2019 letter, her counsel represented that "[t]he emotional despair that Shayna has already experienced is difficult to put into words, but overwhelmingly apparent."[5]  [1/14/2019 Letter from C. Levy, Esq., p. 2, **Exhibit H**.]  Plaintiff's counsel wrote further: "Clearly, it is more cost-effective for DocRX to resolve this with Shayna as opposed to dealing with her in litigation over the next several years.  Specifically, disability cases involving cancer patients usually result in significantly high awards, especially when the facts are as clear as they are here."  [*Id.*]  Based on a Westlaw review of published verdicts in Florida, the average plaintiff's award of compensatory and punitive damages to cancer patients for disability discrimination claims under the FCRA and Americans with Disabilities Act

---

[5] The Court may consider information contained in a pre-suit demand letter from Plaintiff's counsel in evaluating the amount in controversy.  *E.g.*, *Katz v. J.C. Penney Corp., Inc.*, 2009 WL 1532129, at *4 (S.D. Fla. June 1, 2009).

("ADA")[6] is $4,056,667.[7]   More broadly, a Westlaw review of published verdicts indicates the average plaintiff's award of combined compensatory and punitive damages for *any* form of disability discrimination under the FCRA in Florida is $693,089.00.[8]

---

[6] "Florida courts construe the FCRA in conformity with the ADA, [so] a disability discrimination cause of action is analyzed under the ADA." *Wimberly v. Securities Tech. Group, Inc.*, 866 So. 2d 146, 147 (Fla. 4th Dist. App. 2004) (internal quotations and brackets omitted).

[7] *Michael Axel v. Fields Motorcars of Florida, Inc.*, Case No. 15-cv-00893 (S.D. Fla.) (Verdict Date: Feb. 22, 2017) ($3,220,000 of punitive damages and $600,000 of compensatory damages under the FCRA); *Jorud v. Michaels Store Inc.*, Case No. 09-cv-80885 (S.D. Fla.) (Verdict Date: Sept. 1 2010) ($4,000,000 of punitive damages and $4,000,000 of compensatory damages under ADA and FMLA); *Ana Curiel v. Florida Bottling, Inc.*, 05-cv-22507 (S.D. Fla.) (Verdict Date: Nov. 9, 2006) ($350,000 in compensatory and non-compensatory damages under the ADA and the FCRA).  Like Plaintiff alleges here, the plaintiff in *Curiel* alleged she was terminated and subjected to workplace discrimination soon after she informed her employer that she had cancer. *See Curiel v. Fla. Bottling, Inc.*, 2007 WL 171871, at *1 (S.D. Fla. Jan. 18, 2007).  DocRX also notes that an award of punitive damages in excess of the FCRA's $100,000 statutory cap is, of course, subject to remittitur.

[8] In addition to the *Axel* and *Curiel* cases cited *supra*, n.7, *see also Bralo v. Spirit Airlines*, Case No. 13-cv-60948 (S.D. Fla.) (Verdict Date: Feb. 13, 2014) ($160,000 of compensatory damages and $375,000 of punitive damages); *Carrillo v. Publix Super Markets Inc.*, Case No. 00-cv-07362 (S.D. Fla.) (Verdict Date: Nov. 28, 2001) ($90,000 of compensatory damages); *Delgado v. Cole Muffler*, Case No. 00-cv-03602 (S.D. Fla.) (Verdict Date: July 29, 2001) ($150,000 of compensatory damages); *D'Onofrio v. Costco Wholesale Corp*, Case No. 15-cv-62065 (S.D. Fla.) (Verdict Date: June 11, 2018) ($750,000 of compensatory damages and $25,000 of punitive damages); *Nordheim v. State of Florida*, Case No. 01-cv-10096 (S.D. Fla.) (Verdict Date: Sept. 3, 2002) ($100,000 of compensatory damages); *Decarlo v. City of Tallahassee*, Case No. 14-cv-00388 (N.D. Fla.) (Verdict Date: March 2, 2016) ($700,000 of compensatory damages); *Archer v. Aaron Rents Inc. d/b/a Mactavish Furniture Industries*, Case No. 00-cv-00335 (Verdict Date: May 23, 2001) ($500,000 of compensatory damages); *Cross v. Wal-Mart Associates*, Case No. 11-cv-00135 (N.D. Fla.) (Verdict Date: May 8, 2012) ($9,000 of compensatory damages and $1,000 of punitive damages); *Irwin v. Raytheon Co.*, Case No. 97-cv-1166 (M.D. Fla) (Verdict Date: June 19, 1998) ($500,000 of compensatory damages); *Soliday v. 7-Eleven Inc.*, Case No. 09-cv-00807 (M.D. Fla.) (Verdict Date: June 19, 1998) ($756,000 of compensatory damages); *Noel v. Terrace of St. Cloud, LLC*, Case No. 14-cv-00597 (M.D. Fla.) (Verdict Date: Oct. 14, 2015) ($27,512.95 of compensatory damages and $65,000 of punitive damages); *McAnany v. Kraft General Foods, Inc.*, Case No. 95-877-Civ (M.D. Fla) (Verdict Date: Nov. 19, 1996) ($100,000 of compensatory damages and $1,185,000 of punitive damages); *Kirkland v. Atlantic Marine Inc.*, Case No. 03-cv-00530 (M.D. Fla.) (Verdict Date: Nov. 18, 2004) ($300,000 of compensatory damages); *Ladd v. City of West Palm Beach*, Case No. 50-2011-CA-019080 (Fla. Cir. Ct., 15th Jud. Cir., Palm Beach Co.) (Verdict Date: Aug. 30, 2013) ($694,000 of compensatory damages); *Kwiatek v. McCaw Cellular Communications of Florida, Inc.*, Case No. CL 95-8059 (Fla. Cir. Ct.) (Verdict Date: Dec. 11, 1997) ($125,000 of compensatory damages and $1,000,000 of punitive damages).

21.     Moreover, it bears noting that nothing in Plaintiff's Complaint indicates she is seeking anything less than the maximum amount of punitive damages—$100,000.  *See Brown*, 2005 WL 1126670, at *5 (finding additional evidence that the amount in controversy requirement was satisfied where "[t]he FCRA allows for the recovery of punitive damages up to $100,000, Fla. Stat. § 760.11(5), and nothing in [plaintiff's] Complaint or Motion for Remand indicates that she is seeking less than the maximum allowable amount of punitive damages."). Based on the foregoing, the jurisdictional amount in controversy requirement is easily satisfied by Plaintiff's request for compensatory and punitive damages.

22.     **Attorneys' Fees.**  Lastly, Plaintiff specifically requests an award of attorneys' fees, which a "prevailing party" may recover under the FCRA.  Fla. Stat. § 760.11(5).  A reasonable amount of Plaintiff's attorneys' fees is thus included in assessing the jurisdictional amount in controversy.  *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1265 (11th Cir. 2000) ("When a statute authorizes the recovery of attorney's fees, a reasonable amount of those fees is included in the amount in controversy.").  While there is "[c]onflicting case law . . . as to whether the amount of attorney's fees for the amount-in-controversy analysis should be calculated as of the date of removal or through the end of the case," *Brown v. Am. Exp. Co., Inc.*, 2010 WL 527756, at *7 (S.D. Fla. Feb. 10, 2010), the better view, consistent with Eleventh Circuit precedent, is that the Court should consider for purposes of its jurisdictional analysis a reasonable estimate of attorneys' fees based on the likely cost of litigating this action through trial.  *E.g.*, *DO Restaurants, Inc. v. Aspen Specialty Ins. Co.*, 984 F. Supp. 2d 1342, 1346 (S.D. Fla. 2013) (including estimated attorneys' fees likely to be incurred in litigating case through trial in determining amount in controversy).

23.     A consideration of the amount of attorneys' fees likely to be expended through trial (versus at the time of removal) is fully consistent with the Eleventh Circuit's direction that a potential award of attorneys' fees is included in the Court's jurisdictional analysis even where the claims arise under a statute (like the FCRA) that authorizes an award fees only to the *prevailing* party.  *See, e.g.*, *Cohen v. Off. Depot, Inc.*, 204 F.3d 1069 1079–80 (11th Cir. 2000) (acknowledging that "**when a statutory cause of action entitles a party to recover reasonable attorney fees, the amount in controversy includes consideration of the amount of those fees**," and then considering "the potential award of attorneys fees" to the plaintiff under a Florida statute that only authorized an award of attorneys' fees to "a **prevailing party**.") (emphasis added); *Morrison*, 228 F.3d at 1265 (same).  Because a potential award of attorney's fees authorized by statute only to a *prevailing* plaintiff is considered in the Court's jurisdictional analysis, *id.*, and because a plaintiff is not entitled to any such fees without "prevailing" in the action, and, finally, because a party cannot "prevail" absent litigation on the merits following removal, it necessarily follows that the amount of fees must be assessed as of some date *after* removal—i.e., trial.

24.     Plaintiff's attorneys' fees through trial would clearly exceed $75,000, as first evidenced by the fact that plaintiffs' awards of attorneys' fees in discrimination and retaliation actions routinely surpass $75,000.[9]  Second, in an affidavit submitted by Plaintiff's counsel to

---

[9] *E.g.*, *Daniel-Rivera v. Everglades College d/b/a Keiser University*, Case No. 16-cv-60044 (S.D. Fla. 2016) ($156,239.12 in attorneys' fees in ADA action); *Benenati v. Jet Aviation/PalReilly v. Duval County Public Schools*, Case No. 4-cv-1320 (M.D. Fla. 2007) ($223,360 in attorneys' fees in FCRA and ADEA action); *Beach Inc.*, Case No. 01-cv-08732 (S.D. Fla. 2003) ($148,470 in attorneys' fees in FMLA action); *Vasquez v. Hillsborough County School Board*, Case No. 01-cv-02062 (M.D. Fla. 2001) ($75,009 in attorneys' fees in FCRA and ADA action); *Gantt v. The Martin Brower Co.*, Case No. 97-cv-6233 (S.F. Fla. 1998) ($148,775 in attorneys' fees in Title VII action); *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, Case No. 97-1692-CIV (M.D. Fla. 1999) ($500,000 in attorneys' fees in Title VII action).

this Court on February 2, 2017, in another employment action, Plaintiff's counsel represented that "[m]y hourly rate is $350.00 per hour," which represents a reasonable estimate of Plaintiff's counsel's hourly rate in this action.  [*See* Affidavit of Chad Levy, Esq., ¶ 12, attached hereto as **Exhibit I**.]  Mr. Levy's co-counsel also submitted an affidavit to this Court on July 20, 2018 in an employment action representing that his rate is $275.00 per hour.  [*See* Affidavit of D. Cozad, Esq., ¶ 8, attached hereto as **Exhibit J**.]  $350.00 per hour multiplied by 121 hours plus $275.00 per hour multiplied by 121 hours amounts to $75,625, and 121 hours very clearly represents only a portion of the number of hours each of Plaintiff's attorneys will expend litigating this action, as shown below.

25.     Indeed, Plaintiff's attorneys' fees in this action through trial will be much higher than $75,000 as made clear in a filing made by Plaintiff's counsel with this Court just over one year ago where he submitted that "$245,000 represent[ed] a reasonable award for attorneys fees and non-taxable costs" in a case that also involved allegations "that Defendant failed to provide reasonable accommodations for [plaintiff's] disability in violation of [the FCRA]."  [*See D'Onfrio v. Costco Wholesale Corp.*, Case No. 15-cv-62065, Plaintiff's Motion for Attorneys' Fees and Non-Taxable Costs (S.D. Fla.), **Exhibit K.**]  In fact, Plaintiff's counsel referenced this same figure in correspondence with counsel for DocRX prior to filing this action: "We recommend that you discuss settlement at this time.  The last disability discrimination case we tried where the employer did not engage in settlement talks, at all, resulted in a $775,000 jury verdict in our favor along with $245,000 in attorneys fees."  [Ex. H, 1/14/2019 Letter from C. Levy, Esq., p. 3.]  Based on Plaintiff's counsel's suggestion that litigating this action through trial could similarly result in $245,000 in attorneys' fees, $75,625 represents only a portion of the amount of attorneys' fees "in controversy" in this case.

26.     Considering the above categories of back pay, front pay, compensatory damages, punitive damages, and attorneys' fees which "could" be recovered and estimates about which the Court may reasonably deduce from its "judicial experience and common sense," *Roe*, 613 F.3d at 1062, and based on the cited information and data, Plaintiff's claims plainly involve an amount in controversy in excess of $75,000, exclusive of interests and costs.

## IV.     THE OTHER PREREQUISITES FOR REMOVAL HAVE BEEN SATISFIED

27.     As set forth above, this Notice of Removal is timely, as it was filed within thirty days of service of process on DocRX.

28.     After the filing of this Notice of Removal, DocRX will promptly give written notice thereof to Plaintiff and file a copy with the Clerk of the Circuit Court of the Nineteenth Judicial Circuit in and for St. Lucie County, Florida, which shall effect the removal, and the state court shall proceed no further unless and until the case is remanded.  A copy of the form filed in the state court is attached hereto as **Exhibit L**.

29.     The prerequisites for removal under 28 U.S.C. § 1441 have been met.

30.     If any question arises as to the propriety of the removal of this action, DocRX requests the opportunity to present a brief and submit additional evidence in support of its position that the case is removable and to conduct jurisdictional discovery.

WHEREFORE, DocRX, desiring to remove this case to the United States District Court for the Southern District of Florida, Fort Pierce Division, being the division of said Court for the county in which said case is pending, prays that the filing of this Notice of Removal with the Clerk of the Circuit Court of the Nineteenth Judicial Circuit in and for St. Lucie County, Florida, shall effect the removal of said case to this Court.

Respectfully submitted,


/s/ Richard M. Gaal
RICHARD M. GAAL
Fla Bar ID # 64827
Email: rgaal@mcdowellknight.com
Secondary Email:
wgilmer@mcdowellknight.com
tbenton@mcdowellknight.com
McDowell Knight Roedder & Sledge, L.L.C.
11 N. Water Street, Suite 13290
Mobile, AL  36602
Telephone:  251/432-5300
Facsimile:  251/432-5303
Direct Number:  251/431-8831
*Attorney for DocRX Inc.*


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF and/or U.S. Mail, first class postage, pre-paid on October 30, 2019 on all counsel or parties of record on the Service List below.


/s/ Richard M. Gaal


## SERVICE LIST

CHAD E. LEVY, ESQ.
DAVID M. COZAD, ESQ.
LAW OFFICES OF LEVY & LEVY, P.A.
1000 Sawgrass Corporate Parkway
Suite 588
Sunrise, Florida 33323
Telephone: (954) 763-5722
Facsimile: (954) 763-5723
Email: chad@levylevylaw.com
Service Email: assistant@levylevylaw.com